```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Craig S. Jones, et al.,

    Plaintiffs,

v.                                        Case No. 2:11-cv-380

Kerry A. Allen, Plan                      JUDGE MICHAEL H. WATSON
Administrator, et al.,                    Magistrate Judge Kemp

    Defendants.

<u>OPINION AND ORDER</u>

    Plaintiffs brought this ERISA action against former employers, certain other entities, and one individual connected with the severance plans at issue in this case. In conjunction with their briefs opposing Defendants' motion for entry of judgment on the administrative record, Plaintiffs have moved to compel discovery and supplement the record (Docket #72). Because resolution of this motion could impact the standard of review to be applied to the motion for judgment on the administrative record, it must be resolved first. Defendants have also filed a motion to hold in abeyance any ruling on the motion to compel pending the Court's determination of the objections to the report and recommendation (Docket #88).

    For the reasons that follow, the motion to compel discovery and supplement the record is granted in part and denied in part as discussed below. The motion to hold in abeyance any ruling on the motion to compel is denied.

## I. Motion to Hold in Abeyance

    Defendants have moved to hold in abeyance any ruling on the motion to compel. Defendants argue that the resolution of their objection to the report and recommendation regarding the motion for partial summary judgment "could well affect the Court's

analysis of whether Plaintiffs are entitled to discovery," (doc. #88, Mem. at 2), explaining that the Court could reject the Magistrate Judge's recommendation as to the standard of review. However, they fail to explain how such a ruling would affect the motion to compel. Indeed, in claims for denial of ERISA benefits district courts are typically limited to the existing administrative record whether the standard of review is abuse of discretion or de novo. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998). And the circumstances that permit district courts to admit evidence beyond the administrative record do not depend on whether the standard of review is abuse of discretion or de novo. Because resolution of Defendants' objections to the report and recommendation would not affect the Court's ruling on the motion to compel, the motion to hold in abeyance is denied.

## II. Motion to Compel Discovery

While district courts are typically limited to the existing administrative record for claims for denial of ERISA benefits, there are circumstances where the district court may admit evidence not presented to the plan administrator:

> The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 430 (6th Cir. 2006) (quoting Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998)). "[U]ntil a due process violation is at least colorably established, additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible." Moore, 458 F.3d at 431. Plaintiffs

discuss several potential avenues for fitting within this exception, which are set forth below.

### A. Conflict of Interest

Bias is one of the permissible justifications for discovery listed in Moore. Plaintiffs have alleged that "because Defendants both fund the benefits and determine claims under the Plans, they suffer an inherent (and actual) conflict of interest that must be factored into the Court's analysis . . . ." (Doc. #72 at 51.)

The Supreme Court has noted the potential impact of this type of a conflict of interest:

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.

Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (citation omitted). In discussing the significance of the conflict of interest, the Supreme Court noted that it should be a more important factor "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," and "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits."

3

Id. at 117 (citations omitted).

The Court of Appeals has read the Supreme Court decision in Glenn to counsel against imposing a threshold evidentiary showing of bias as a prerequisite to discovery where there is an administrator/payor conflict; but "[t]hat does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan." Johnson v. Connecticut Gen. Life Ins. Co., 324 F. App'x 459, 466-67 (6th Cir. 2009). "District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under Wilkins." Id.

Here, the three committee members were Kerry Allen, Brian Ferguson, and James Popp. (Doc. #51, Exh. 1.) According to Mr. Ferguson's declaration, all three were PNC employees at the time of the committee deliberations and decisions at issue. (Id.) Mr. Ferguson was employed by PNC as Vice President, Human Resources, Ms. Allen was PNC's Vice President, Corporate Benefits Manager, and Mr. Popp was PNC's Director, Employee Relations. (Id.) In light of this clear conflict of interest, Glenn, 554 U.S. at 108, and in light of the facts in the administrative record regarding the basis for the committee's decision, the Court has discretion to look beyond the administrative record to consider Plaintiffs' allegations of bias. Johnson, 324 F. App'x at 466-67.

Plaintiffs have pointed to Mr. Ferguson's deposition testimony from a separate lawsuit in which he testified that he reviewed the National City Plan prior to PNC's purchase of National City "to enable [PNC's] M&A group to calculate the cost of what a transaction with National City may be." (Doc. #79, Exh. R-4 at 22-23.) In describing his review, he testified that he "appl[ied] the number of people that were likely to be

4

displaced that fell in [certain salary grades], I just applied what the plan said they would get. So it was just a cost analysis. There wasn't an analysis of – within any great detail about who would be eligible and how that happened." Id. at 24. He received no separate compensation for being part of the committee – he was paid the same amount by PNC whether or not he was on the committee. Id. at 42. He testified that being part of the committee was one of his job responsibilities. Id. at 45. He also testified that he could probably have resigned from the committee without jeopardizing his continued employment. Id. at 46-47.

While the above facts do not appear to be contested, there are disputes as to other circumstances that could affect the degree of potential bias. Defendants state that Mr. Ferguson was testifying about the 2008 version of the National City Plan and that "there is no evidence to suggest Mr. Ferguson conducted any prior analysis of the 2005 Plan's termination." (Doc. #79 at 14.) However, the parties have presented no evidence demonstrating that he did not analyze the 2005 Plan's termination, and Plaintiffs allege that he should have done so as a part of his review. There also could be additional relevant evidence of the types the Supreme Court discussed in Glenn.

Accordingly, the Court finds that just cause exists to allow appropriate discovery limited to discovering evidence of bias and conflict of interest and any resulting denial of due process.

### B. Denial of Due Process

It appears that Plaintiffs are arguing a due process violation based on Defendants' failure to provide a reasoned denial within the time set forth in the Plans. However, there is no dispute of fact as to the timing of the denials. Discovery into timeliness or untimeliness of the claim denials is not warranted. Further, the timeliness of the claim denials is

5

governed by the Plans, including the consequences for failing to meet the deadline for issuing a claim denial.  Accordingly, to the extent that the deadline was missed, the Plans provide for automatic approval of the claims and so there would be no violation of due process.

Plaintiffs also argue that the committee failed to investigate and collect pertinent evidence.  This argument is discussed in the next section, which addresses the alleged inadequacy of the administrative record.

### C.  Inadequacy of Administrative Record

When a plan administrator has acted arbitrarily and capriciously in deciding what information he or she would consider in deciding a claim, the Court of Appeals has held that such a case must be remanded to allow the administrator "to conduct a review in the first instance, considering the relevant material it originally excluded."  See, e.g., Killian v. Healthsource Provident Administrators, Inc., 152 F.3d 514, 522 (6th Cir. 1998).  It is not always clear what records a plan administrator has considered.  In such cases, courts sometimes allow discovery into "whether a complete administrative record has been assembled, whether any relevant material was not submitted to the Plan Administrator, and what was considered by the Plan Administrator."  See, e.g., Pediatric Special Care, Inc. v. United Medical Resources, No. 10-13313, 2011 WL 133038, *2 (E.D. Mich. Jan. 14, 2011); see also Crosby v. Louisiana Health Service & Indem. Co., 647 F.3d 258, 263 (5th Cir 2011).  However, in at least one instance, the Court of Appeals denied discovery as to the completeness of the administrative record because the defendant's counsel "submitted that [the defendant] has produced an exact copy of the Administrative Record as it was maintained in the ordinary course of [the defendant's] business," and Plaintiff presented no evidence to support his contention

6

that the defendant produced an incomplete copy of the administrative record.  Likas v. Life Ins. Co. of N. Am., 222 F. App'x 481, 485 (6th Cir. 2007).

    Here, Defendants have filed what they have represented to be the complete administrative record, and they have specifically described the documents as including "the materials submitted by Plaintiffs in connection with their claims for benefits, non-privileged materials created or considered by the committees in the course of making their benefits determination and the governing plan documents."  (Docket #59 at 2.)  Plaintiffs point out that Defendants filed a version of the Administrative Record that they represented as complete and then subsequently added documents to the Administrative Record, and Plaintiffs argue that this should raise suspicion that the current version of the Administrative Record is incomplete.  However, it is very common in the process of discovery that a party will provide documents in response to a document request and later realize that documents were omitted or that one interpretation of the document request would include additional documents, and so the producing party supplements its previous production.  While there are certainly times when multiple versions of the administrative record would raise suspicions, the Court does not find sufficient cause here to permit discovery into the completeness of the administrative record.

    Plaintiffs' primary argument as to the administrative record, however, appears to be a slightly different one.  In their motion to compel, Plaintiffs summarize the occasions on which they requested documents from Defendants but were denied those documents.  (Docket #72 at 11.)  Plaintiffs noted that the Plan Administrator and Committee asserted that the requested documents were not relevant because they had not been presented to nor relied upon by the committee.  Id.  Plaintiffs wrote

7

"[b]ut of course, the reason Plaintiffs requested the information *was so that they could present it to the Committee.*" Id. Further, in their reply, Plaintiffs assert that they have "demonstrated that Defendants have omitted evidence from the Administrative Record that absolutely should have been collected and considered by the Committee with regard to Plaintiffs' claims for severance." (Docket #82 at 19.) Plaintiffs argue that Defendants denied them due process by "deliberately avoid[ing] gathering the information the Committee was obligated to include in the administrative record." (Docket #72 at 44.) Plaintiffs cite to Warshaw v. Continental Cas. Co., 972 F. Supp. 428, 430 (E.D. Mich. 1997), in which the court interpreted Perry v. Simplicity Engineering, 900 F.2d 963 (6th Cir. 1990), to permit the admission of evidence that was reasonably available to the plan administrator but that the plan administrator chose not to seek. However, if the committee acted arbitrarily and capriciously in deciding what information it would consider in deciding a claim, the case can be remanded to the committee with instructions to consider information that it improperly chose not to consider. See, e.g., Killian, 152 F.3d at 522. Further, if a failure to investigate pertinent evidence arose from a conflict of interest, the discovery regarding the conflict of interest may demonstrate a clear due process violation, which may result in substantive discovery being ordered as discussed below.

### D. Substantive Discovery

"If discovery into alleged procedural defects supports a plaintiff's allegations of due process denial, then a district court is obligated to permit discovery into more substantive areas of a plaintiff's claim." Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 430-31 (6th Cir. 2006). "If a court finds that due process was not denied, however, then it is appropriate for the district court to deny further discovery into substantive areas,

8

or else a plaintiff could circumvent the directive of Wilkins merely by pleading a due process problem." Id. at 431. At this point, the Court finds that it is premature to permit substantive discovery.

### E. Defenses to Motion to Compel

Defendants argue that Plaintiffs are not entitled to discovery because the allegations in the Complaint are insufficient to permit the discovery sought. Although not addressing whether allegations of bias need be pled in the complaint, the Court of Appeals has stated generally that district courts have discretion to determine if an allegation of bias is sufficient to permit discovery. Johnson v. Connecticut Gen. Life Ins. Co., 324 F. App'x 459, 466-67 (6th Cir. 2009). Defendants cite Rule 26(b) and cases from the Eastern District of Tennessee case to stand for the proposition that Plaintiffs must have pled a conflict of interest in order to be permitted conflict of interest discovery. (Docket #79 at 37.) However, Rule 26(b) does not require Plaintiffs to plead conflict of interest in their complaint in order for the discovery to be relevant. Rather, Rule 26(b) provides that the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense," and conflict of interest is certainly relevant to the claims at issue in this case because it affects the Court's application of the standard of review. Further, even if Defendants are correct that conflict of interest must be pled in the complaint, Plaintiffs' complaint includes allegations sufficient to make conflict of interest discovery relevant. (See, e.g., Docket #2 at ¶208 ("The Plan Administrator is once again trying to avoid the express terms of an employee benefit plan for its benefit and at the significant cost and expense of Plaintiffs and other similarly situated Red Plan participants").) Therefore, this defense does not preclude conflict of interest

9

discovery here.

Defendants also make arguments regarding which issues were presented to the committee.  Plaintiffs state, "Defendants assert that Plaintiffs' arguments in support of conflict discovery fail because Plaintiffs did not make them to the Plan Administrator/Committees first."  (Docket #82 at 6.)  If Defendants are making that assertion, that assertion would fail, because the rationale for allowing discovery outside of the administrative record is to look into whether there was a denial of due process.  See, e.g., Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 430-31 (6th Cir. 2006).  However, it appears that Defendants were actually arguing that substantive discovery requested by Plaintiffs should be denied because, among other reasons, the substantive issues were not raised during the administrative process.  (Docket #79 at 42.)  To the extent Defendants are arguing about substantive discovery, such arguments are premature at this point.

Defendants also argue that Plaintiffs cannot prevail on their claim relating to inadequacy of the administrative record because they cannot point to documents that were missing. Because the Court is not ordering discovery related to any inadequacy of the administrative record at this time, the Court need not address that defense.

### III.  Conclusion

For all the foregoing reasons, the Court denies Defendants' motion to hold in abeyance any ruling on the motion to compel (Docket #88) and grants in part and denies in part Plaintiffs' motion to compel discovery and supplement the record (Docket #72).  Plaintiffs are authorized to seek discovery limited to the subject matter authorized by this Order within fourteen days after this Order is filed.

Any party may, within fourteen days after this Order is

filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3,pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

   This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.


                              /s/ Terence P. Kemp
                              United States Magistrate Judge