# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Craig S. Jones, *et al.,*

    **Plaintiffs,**

v.

                                  **Case No. 2:11–cv–380**

Kerry A. Allen, Plan                        **Judge Michael H. Watson**
Administrator, *et al.,*                      **Magistrate Judge Kemp**

    **Defendants.**

## OPINION AND ORDER

Plaintiffs move for summary judgment on their ERISA claims in Counts VII

and XI.  ECF No. 53.  Magistrate Judge Kemp issued a Report and

Recommendation, ECF No. 84, recommending that the Court deny Plaintiffs'

motion.  Plaintiffs and Defendants have filed timely objections, ECF Nos. 91, 93,

94.[1]  For the following reasons, the Court sustains Defendants' objections, finds

Plaintiffs' objections moot, and denies Plaintiffs' motion for partial summary

judgment.

---

[1] Defendants Red Capital Advisors, LLC, Red Capital Community Development
Company, LLC, Red Capital Markets, LLC, and Red Mortgage Capital, LLC have
moved to join the other Defendants' objections to the Magistrate Judge's Report and
Recommendation, ECF No. 94, the other Defendants' response to Plaintiffs' objections,
ECF No. 103, and the other Defendants' response to Plaintiffs' motion to amend the
complaint, ECF No. 105.  The Court grants all three motions and considers the
objections and responses to be the arguments of all Defendants.

## I. FACTS

Plaintiffs Craig S. Jones, David C. Martin, John R. Poling, Steven R. Russi and Scott D. Zeiger are former executives of Defendants Red Mortgage Capital, Inc., Red Capital Markets, Inc., Red Capital Advisors, LLC, or Red Capital Community Development Company, LLC, (collectively "Red Capital Defendants"), a mortgage and investment bank firm.

In 2004, Defendant National City Corporation ("National City") acquired Red Capital.  Plaintiffs became participants in the National City Corporation Management Severance Plan ("National City Plan").  Plaintiffs were also participants in the Red Capital Group Management Severance Plan ("Red Capital Plan"), a separate but substantially similar severance plan.

During 2008, National City began exploring possible partnerships with other banks.  In a presentation on September 29, 2008, Goldman, Sachs & Co. discussed options with National City executives and presented a list of "Potential Strategic Partners."

Effective September 30, 2008, the National City Corporation Management Severance Plan was amended and restated.[2]  The 2008 version of the National City Plan was generally the same plan as the 2005 version.  Under both

---

[2] The 2005 version of the National City Plan states National City may amend or discontinue the National City Plan by action of the Compensation and Organization Committee of the National City Board of Directors or another committee appointed by the Board to serve as the administering committee of the plan. Mot. Convert Ex. 2, ECF No. 51-3.  However, neither side presents evidence on how the National City Plan was purportedly amended on September 30, 2008.

versions, a participant was eligible for benefits if, after a Change of Control as defined in the National City Plan, he or she was terminated during the Protection Period, again, as defined in the National City Plan. However, under the 2005 version, a participant could qualify for benefits by self-terminating due to changed job responsibilities, but under the 2008 version, a participant was eligible for benefits only if he or she was involuntarily terminated or self-terminated after being forced to move their primary work location more than fifty miles.

At some point in the fall of 2008, National City and PNC began discussions about a merger or sale. The parties dispute the exact date those discussions began. On December 31, 2008, PNC acquired National City and assumed responsibility for the administration of the National City and Red Capital Plans.

During February and March of 2010, PNC discussed the sale of Red Capital with potential buyers. On March 15 and 16, 2010, Plaintiffs each sent letters to representatives of PNC and Red Capital Group that purported to be notices of a change in circumstances and of an intent to pursue severance benefits. Four of the five letters specifically referenced § 3.2(e) in the 2005 version of the National City Plan, which required written notice of a change in circumstances and an opportunity for the employer to cure before a participant could terminate employment and seek benefits.

Having received no response to their March 2010 letters, on March 30 and 31, 2010, Plaintiffs notified Defendants of their conditional resignation but continued to work. The conditional resignations stated Plaintiffs were under the

impression they would not be retained after the sale of Red Capital and that if they were eligible for benefits under the National City and Red Capital Plans, they resigned effective March 31, 2010. *See, e.g.*, Jones' Conditional Resignation, Mot. Convert Ex. 10 PAGEID # 1454, ECF No. 51-5.

On March 31, 2010, Defendant Kerry Allen, Plan Administrator for both the National City and Red Capital Plans, sent each plaintiff a memorandum that acknowledged Plaintiffs' belief that they might have severance claims and PNC's stance that Plaintiffs were not entitled to severance benefits ("Allen Memo"). Mot. Convert Ex. 9, ECF No. 51-5.  The memo stated that the Plan Administrator and the respective plan Committee would treat Plaintiffs' previous submissions as claims but encouraged Plaintiffs to file official claim forms.  The memo stated the Plan Administrator and the respective plan Committee "have 90 days from the date of your claim to review it, and 30 days after making a determination to respond to you in writing." *Id.*

On April 16, 2010, Joan Gulley, Chief Human Resources Officer of PNC issued a notice that PNC was discontinuing and terminating the Red Capital Plan. Mot. Convert Ex. 37 PAGEID # 1879, ECF No. 51-10.

Throughout April 2010, Plaintiffs emailed their official claim forms to Allen: Russi on April 16; Jones on April 23; Zeigler on April 27; Martin on April 28; and Poling on April 30.  *See, respectively*, Mot. Convert Exs. 18, 15, 29, 16, 17, ECF Nos. 51-6, 51-8.

Plaintiffs allege that on April 27, 2010, PNC notified them their last regularly scheduled work day would be April 30, 2010 but that they continued to receive salary and benefits through June 26, 2010.  Compl. ¶ 53–54, ECF No. 2.

In May 2010, there was a transaction between Red Capital and an investment group led by ORIX USA Corp. ("ORIX").  The parties dispute whether ORIX acquired assets or ownership of Red Capital in that transaction.  On June 16 and 24, 2010, respectively, Plaintiffs Russi and Jones initiated a second set of claims for severance benefits under the Red Capital Plan based on the Red Capital-ORIX transaction.  Russi's Claim for Benefits Under Red Capital Plan, Mot. Convert Ex. 33, ECF No. 51-9; Jones' Claim for Benefits Under Red Capital Plan, Mot. Convert Ex. 30, ECF No. 51-8.

On August 18, 2010, Allen notified each plaintiff that the Claim and Appeal Committee of the Red Capital Plan, 2005 National City Plan and 2008 National Plan ("the Committee") had denied all of their claims.   Mot. Convert Exs. 38–42 PAGEID # 1881–1909, ECF No. 51-10.  On October 14, 2010, Plaintiffs filed notices appealing the August 18, 2010 letter.  Plaintiffs argued that the denials had been incorrect and that the Committee's failure to respond to the March 2010 letters within 120 days meant that the claims contained in the March 2010 letters were deemed approved pursuant to § 5.2 of the National City and Red Capital Plans.

On December 7, 2010, Plaintiffs Russi and Jones, having received no response to their second claims, notified Defendants of their belief that

Defendants' failure to respond within 120 days caused those claims to be

deemed approved pursuant to § 5.2 of the Red Capital Plan.  Mot. Convert Ex.

48 PAGEID # 1934, ECF No. 51-10.

On December 17, 2010, Allen notified all Plaintiffs that the Committee had

denied their October 2010 appeals and notified Jones and Russi that the

Committee had denied Jones and Russi's second claims.

## II. PROCEDURAL HISTORY

On May 3, 2011, Plaintiffs filed this suit against Defendants alleging

Defendants wrongly denied them benefits and otherwise infringed on their

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq,*

and contractual rights.  ECF No. 2.  On July 15, 2011, Defendants moved to

dismiss, ECF No. 21.  The Magistrate Judge recommended that the Court deny

the motion to dismiss without prejudice because the Court needed to consider

the administrative record in order to resolve the dispute between the parties, ECF

No. 50.  Defendants then moved to convert its motion into a motion for judgment

on the administrative record and attached the records that the Committee had

when it made its decisions.  The Court adopted the Magistrate Judge's

recommendation to deny the motion to dismiss and denied Defendant's motion to

convert as prejudicial to Plaintiffs, ECF No. 55.

After the Magistrate Judge issued his Report and Recommendation on the

motion to dismiss but before the Court adopted that recommendation, Plaintiffs

filed this motion for partial summary judgment.  Plaintiffs move for summary

judgment on Counts VII and XI and request a holding that as a matter of law, the 2005 version of the National City Plan is the controlling version of the plan.  In Count VII, Plaintiffs seek judgment on all of their claims under the 2005 National City Plan due to the application of the "deemed approved" provision in § 5.2 of the National City Plan.  In Count XI, Plaintiffs seek judgment on Jones and Russi's claims under the Red Capital Plan due to the application of the "deemed approved" provision in § 5.2 of the Red Capital Plan.

Defendants subsequently moved for judgment on the administrative record, ECF Nos. 60, 86.  Those motions remain pending and are not considered in this Order.

On February 7, 2013, the Magistrate Judge recommended that the Court deny Plaintiffs' motion for partial summary judgment, ECF No. 84.  The Magistrate Judge based this recommendation on a genuine dispute of fact over whether the 2005 National City and Red Capital Plans were in effect at the time Plaintiffs submitted their claims.

The Magistrate Judge analyzed United States Supreme Court, United States Court of Appeals for the Sixth Circuit, and other federal appellate precedent to conclude that where, as here, a provision in a benefit plan renders a claim denied or approved after the claim has been pending a certain amount of a time, any decision by the administrator after that time limit is reviewed *de novo*. Accordingly, the Magistrate Judge applied the *de novo* standard of review to decide whether § 5.2 of the Plans rendered Plaintiffs' claims approved.

The Magistrate Judge concluded that Plaintiffs' March 2010 letters were claims, Defendants did not respond to them within the 120 day window as required by § 5.2 of the National City Plan, and, therefore, the claims were deemed approved. However, the Magistrate Judge noted that Count VII only mentioned "deemed approved" claims under the 2005 National City Plan and found a genuine dispute of material fact as to whether the 2005 National City Plan was in effect at the time Plaintiffs made their claims. In addition, the Magistrate Judge found there was a genuine dispute of material fact as to whether the Red Capital Plan had been properly terminated prior to Jones and Russi submitting claims under that plan.

Plaintiffs and Defendants filed timely objections to the Magistrate Judge's Report and Recommendation.

### III. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Although Plaintiffs' motion is styled as a motion for partial summary judgment, the summary judgment standard is inapposite to ERISA cases because it is futile to determine whether there is a genuine dispute to be

determined by a trial when the Court is the final fact finder and, except for in unique circumstances, may consider only the evidence presented to the administrator. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 617 (6th Cir. 1998) (Gilman, J., concurrence, writing for majority). *See also Johnson v. Prudential Ins. Co. of America*, No. 2:11–cv–664, 2012 WL 5378313, at *2 (S.D. Ohio Oct. 31, 2012).[3] Accordingly, the Court construes Plaintiffs' motion as a motion for judgment on the administrative record and the appropriate scrutiny of review is the first matter for the Court's consideration.

## IV. DISCUSSION

### A. Count VII

In Count VII, Plaintiffs seek recovery under 29 U.S.C. § 1132(a)(1)(b) for a denial of benefits in violation of the terms of 2005 National City Plan. Plaintiffs allege that § 5.2 of the 2005 National City Plan states that if a participant does not receive a denial within 120 days of submitting a claim, the claim shall be deemed approved. Plaintiffs aver they submitted claims in March 2010; they did not receive denials until August 18, 2010—more than 120 days after the claims

---

[3] The Court notes that a recent published opinion by the Sixth Circuit applied the summary judgment standard when reviewing an ERISA administrator's decision for arbitrary and capricious error, stating "the Court must determine whether there is any genuine issue of material fact as to whether the Plan Administrator's decision was arbitrary and capricious." *Ferhner v. United Transp. Union Discipline Income Prot. Program,* 645 F.3d 338, 342–43 (6th Cir. 2011) (quoting *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005)). The decision in *Ferhner*, however, did not consider the decision or reasoning in *Wilkins*, and relied on a line of cases that originated with *Davis v. Kentucky Finance Companies Retirement Plan*, 887 F.2d 689 (6th Cir. 1989), which predated *Wilkins*. Accordingly, the Court continues to follow the reasoning in *Wilkins* and declines to apply the summary judgment standard.

were submitted; therefore, their claims were deemed approved; and yet, Defendants denied Plaintiffs benefits.

### 1. Standard of Review

Based on the arguments of the parties and a thorough review of case law, the Magistrate Judge determined the Court should consider *de novo* whether Plaintiffs' claims were deemed approved. Plaintiffs agree with the Magistrate Judge on this point. Defendants object to *de novo* review and argue the Court should defer to the plan committee's decisions which found § 5.2 did not entitle Plaintiffs to benefits.

"A denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants administrators such discretion, the administrators' decisions should be reviewed only for arbitrary and capricious error. *Price v. Board of Trustees of Indiana Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011).

All parties agree that Article 14 of both versions of the National City Plan gave the Compensation and Organization Committee of the National City Board of Directors, or another committee appointed by the Board to serve as the administering committee of the plan, "full power and authority to interpret, construe and administer this Plan and its interpretations and construction hereof,

and actions hereunder, including the timing, form amount or recipient of any

payment to be made hereunder." 2005 National City Plan § 2.1(e), art. 14, Mot.

Convert Ex. 1, ECF No. 51-2. Likewise, no party disputes that the Committee,

which made the determination concerning Plaintiffs' National City Plan benefits,

was the committee appointed by the Board to administer the plan. Accordingly,

the National City Plan granted the Committee discretion to determine benefits

and construe the terms of the plan.

Plaintiffs argue, and the Magistrate Judge agreed, that § 5.2 of both

versions of the National City Plan limited the Committee's discretion. Section 5.2

states:

> [t]he committee or its designee(s) will review the claim and approve
> the severance compensation identified in Article 4 of this Plan or
> provide notice that the claim has been denied. The Committee or its
> designee(s) will review each claim within 90 days of the Committee's
> receipt of such claim. The Committee or its designee(s) shall notify
> the Participant in writing of any claims or portions of claims that have
> been denied within 30 days of the Committee's determination. If a
> notice of denial is not received by a Participant within the lesser of
> (a) 120 days of the Committee's receipt of the claim or (b) within 30
> days of the Committee's or its designee(s)'s making its
> determination within respect to the Participant's claim, the claim shall
> be deemed to have been approved.

2005 National City Plan § 5.2, ECF No. 51-2; 2008 National City Plan § 5.2, ECF

No. 51-3. Plaintiffs argue their March 2010 letters were claims and because the

Committee did not notify Plaintiffs of a determination until August 18, 2010—

more than 120 days after Plaintiffs submitted their March 2010 letters—Plaintiffs

claims were "deemed approved." Plaintiffs reason that once their claims were

"deemed approved," the Committee no longer had discretion to approve or deny Plaintiffs' claims and, therefore, the Court should not defer to the Committee's subsequent attempts to justify the denial of Plaintiffs' claims.  Defendants argue that both versions of the National City Plan gave the Committee discretion to determine whether § 5.2 had been invoked and, therefore, the Court should review the Committee's decision that § 5.2 did not entitle Plaintiffs to benefits for arbitrary and capricious error.

Case law supports the proposition that an administrator's discretion can be limited in time.  In *Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Proection Plan*, the United States Court of Appeals for the Ninth Circuit held *de novo* review of a benefits decision was appropriate where a plan administrator failed to render a decision within the 120 day time limit required by the plan and the ERISA regulations in effect at that time.  The *Jebian* panel held:

> The instrument in this case does vest discretion, but the same instrument and the regulation that governed it set time boundaries within which that discretion must be exercised.  We are just as bound by the Plan language deeming denial in the event that time limits are exceeded as we are bound by the Plan language that grants discretion to the Plan administrator.  Decisions made outside the boundaries of conferred discretion are not exercises of discretion, the substance of the decisions notwithstanding.

*Id.* at 1104.  Accordingly, the administrator's untimely denial of Jebian's appeal was not entitled to deference by the court. The United States Courts of Appeals for the Tenth, Third, and Second Circuits have taken positions similar to the Ninth

Circuit in *Jebian*. *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002); *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005).

The Sixth Circuit's position on the ability of a time limit for determining claims to limit an administrator's discretion is unclear. In *Daniel v. Eaton Corporation*, the Sixth Circuit held "the standard of review is no different whether the appeal is actually denied or is deemed denied." 839 F.2d 263, 267 (6th Cir. 1988). However, as the Magistrate Judge noted the reasoning in *Daniels* is at least undermined by *Firestone* because *Daniel* relied on the pre-*Firestone* default to review for arbitrary and capricious error. In *Firestone*, the Supreme Court changed the default to *de novo* review. 489 U.S. at 115. The decision in *University Hospitals of Cleveland v. Emerson Electric Company* noted "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner" but did not decide the issue because its ruling on the merits rendered such consideration unnecessary." 202 F.3d 839, 846 n.3 (6th Cir. 2000).

Further resolution of the issue presented in *Jebian*, is not, however, necessary because the issue presented in *Jebian* is not the issue presented here. *Jebian* and the other cases relied on by the Magistrate Judge concern a court's standard for reviewing an administrator's denial of benefits made after the claims had been deemed denied by a timing provision. *See Gilbertson v. Allied Signal, Inc.* 328 F.3d 625 (10th Cir. 2003), *Nichols v. Prudential Ins. Co. of*

*America*, 406 F.3d 98 (2nd Cir. 2005); *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3rd Cir. 2002). In addition, it was uncontested that the claims had been deemed denied. Therefore, the *Jebian* court and the other circuits did not have to consider whether the administrators had discretion to determine whether the time limits contained in the plans and regulations at issue had been triggered.

Here, the Committee determined Plaintiffs' March and April 2010 submissions did not trigger § 5.2 of the National City Plan. Therefore, the question before this court is, did the Committee have discretion to determine whether Plaintiffs' March and April 2010 submissions triggered § 5.2?

The Magistrate Judge concluded that the March 2010 letters were claims, the Committee failed to respond to those claims within 120 days, § 5.2 deemed Plaintiffs' claims approved, and the Committee no longer had discretion to interpret the National City Plan.

However, at most, § 5.2 limits the amount of time the Committee has to exercise discretion about whether a claim should be approved or denied on the merits. Section 5.2 states only that a claim that is not denied within 120 days will be deemed approved and the case law considers only whether that type of time limit restricts an administrator's discretion to approve or deny a claim.

In determining § 5.2 did not entitle Plaintiffs to benefits, the Committee was interpreting § 5.2 and other plan provisions which defined the term "claim," not determining whether Plaintiffs' claims should be approved or denied on the merits. In fact, the question of whether § 5.2 entitled Plaintiffs to benefits is a

distinctly different question from whether they were initially entitled to benefits on the merits of their claims.  The question of whether Plaintiffs' claims were "deemed approved" under § 5.2 was new on appeal; indeed, no argument could be made under § 5.2 until the decisions were allegedly late.  In addition, in the Committee's second level appeal decision on the National City Plan claims, the Committee considers Plaintiffs' procedural § 5.2 arguments separately from its review of its decisions on the substantive merits of the claims.

The broad grant of discretion in Article 14 of the National City Plan grants the Committee authority to interpret the National City Plan.  There is no time limit on when the Committee can interpret a plan provision which is separate from a claim determination.  Accordingly, whether or not the Committee retained discretion to consider the substantive merits of Plaintiffs' claims , the Committee had discretion under the Plan to determine whether Plaintiffs' claims had been "deemed approved" under § 5.2.

Plaintiffs argue that while administrators may have discretion to decide factual matters, they do not have discretion to interpret provisions of a plan. However, the National City Plan explicitly gives the Committee the authority to construe terms of the plan.  2005 National City Plan art. 14, ECF No. 51-2. "Where the plan grants the administrator discretionary authority to construe and interpret the provisions of the plan, the administrator is entitled to 'great leeway in interpreting ambiguous terms." *Adams v. Anheuser –Busch Companies, Inc.*, -- F. Supp. 2d ---, 2013 WL 123084, at *3 (S.D. Ohio Jan. 9, 2013).  The cases

Plaintiffs cite hold that a court is to interpret an ERISA plan based on general principles of contract law but do not consider whether a court must give an administrator deference when the plan grants the administrator discretion to construe the terms. *See, e.g., Morrison v. March & McLennan Cos., Inc.*, 326 F. Supp. 2d 833, 840 (E.D. Mich. 2004) (discretion not mentioned); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998) (interpreting contract to determine whether plan granted discretion). Therefore, Plaintiffs argument is without merit.

Plaintiffs also argue that if, as Defendants contend, the 2005 National City Plan terminated in 2008, the Committee did not have discretion in 2010 to construe the terms of the 2005 National City Plan. Plaintiffs' argument is based on the reasoning in *Firestone*: an administrator's authority to interpret a plan or make benefits decisions is derived solely from the plan itself. *Firestone*, 489 U.S. at 115. Plaintiffs reason that because the plan creates the administrator's discretion, once the plan terminates, an administrators' discretion to interpret the plan ends as well.

Although Plaintiffs' reasoning is logical, apart from this logic, Plaintiffs cite, and the Court has found, no precedent to support the proposition that when an ERISA plan terminates, the administrator's discretion to interpret the plan ends immediately. In addition, in analogous areas of the law, some parts of a document can outlive others. Contract provisions can remain in effect after a contract terminates. *See, e.g., Litton Fin. Printing Div. v. Nat'l Labor Relations Board*, 501 U.S. 190, 208 (1991) (arbitration provision may survive termination of

a contract). A trustee may retain powers to wrap up distribution after a trust ends. Restatement (Second) of Trusts § 344 (2012).

The Court, however, need not determine whether an administrator's discretion outlives the plan. National City's action on September 30, 2008, is best understood as an amendment to the National City Plan rather than a termination of a separate plan, and the discretion contained in the National City Plan existed after the amendment.[4] Neither side describes how the process through which the 2008 version was created or how the changes were made known to the employees. Therefore, the Court has only the document itself to consider. The document Defendants refer to as the 2008 National City Plan is titled "National City Corporation Amended and Restated Management Severance Plan (Effective September 30, 2008)." 2008 National City Plan, ECF No. 51-3. Although Defendants argue that "restated" in this context means "replaced," the more natural meaning of restated is "to state again or in another way," which is more similar to amending than terminating. Merriam-Webster Online Dictionary, 2013. In addition, the document is a "blackline" comparison between the 2005 version of the National City Plan and the new 2008 version. It shows that PNC only made a few changes in 2008 and the only major change was the eligibility

---

[4] The Court is aware that as part of its rejection of Plaintiffs' § 5.2 arguments, the Committee determined that the 2005 National City Plan terminated on September 30, 2008. However, at this juncture, the Court must decide whether the Committee had discretion to make that determination and, therefore, the Court must consider the issue *de novo*. In addition, the Committee's determination that the plan ended and therefore § 5.2 was no longer in effect but that discretion survived, smacks of arbitrariness and caprice.

criteria in Article 3. The procedural provisions remained exactly the same, including Article 14 which grants the Committee discretion to construe the plan and § 5.2 which states claims are deemed approved if the Committee does not render a decision within 120 days. Accordingly, the 2008 version simply amended the National City Plan and even if the 2005 version was no longer in effect after 2008, the Committee retained discretion to construe the terms of the National City Plan.[5]

The Court sustains Defendants' objections in relation to the standard of review to be used in considering whether Plaintiffs are entitled to benefits pursuant to § 5.2. The Court will review the Committee's determination that Plaintiffs are not entitled to benefits pursuant to § 5.2 for arbitrary and capricious error.

### 2. Section 5.2 in the National City Plan

Review for arbitrary and capricious error is "highly deferential." *Sanford v. Harvard Indus.*, 262 F.3d 590, 595 (6th Cir. 2001) (citing *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)). So long as the fiduciary's decision was "rational in light of the plan's provisions," courts must uphold the denial of benefits when applying the arbitrary and capricious standard. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). In other

---

[5] The Court does not decide whether a claim under the 2005 version of the National City Plan is a claim under the National City Plan generally or whether Count VII seeks relief under both versions of the National City Plan.

words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*

However, here, the Court employs a heightened form of review for arbitrary and capricious error because the same entity funds the plan and makes benefits determinations. *Morris v. Am. Electric Power Long-Term Disability Plan*, 399 F. App'x 978, 981–82 (6th Cir. 2010). *See Bluhm v. PNC Finan. Servs. Group, Inc.*, No. 11cv313, Doc. No. 35, 12 (S.D. California Feb. 1, 2013), ECF No. 83 (applying heightened arbitrary and capricious review to same committee decisions because plans were funded and administered by National City/PNC). This conflict of interest is a factor in determining whether the Committee's decisions were arbitrary and capricious. *Morris*, 399 F. App'x at 981.

The Committee determined § 5.2 does not entitle Plaintiffs to benefits for four reasons: (1) the 2005 National City Plan did not exist in March or April 2010 and therefore § 5.2 of that plan was not in effect, (2) the March 2010 letters were not claims, (3) Plaintiffs could not file claims in March or April 2010 because a participant cannot make a claim under the National City Plan prior to the termination of their employment with Red Capital and (4) Plaintiffs' claims were submitted in bad faith. *See, e.g.*, Denial of Jones' Appeal, Mot. Convert Ex. K PAGEID # 2922, ECF No. 51-17.[12]

---

[12] The Committee's appeal denial letters to each Plaintiff were nearly identical. *See* Denial of Jones' Appeal, Mot. Convert Ex. K PAGEID # 2919–29, ECF No. 51-17;

For brevity, the Court skips directly to the reasoning which supports the
Committee's decision for all five Plaintiffs: Plaintiffs could not file claims in March
or April 2010 because both were prior to the termination of their employment with
Red Capital.  The conclusion that this offers a reasonable explanation for
rejecting Plaintiffs' § 5.2 arguments requires several determinations.  First, the
version of the National City Plan in effect in 2010 was the 2008 version of the
National City Plan.  Second, under the 2008 National City Plan, a plan participant
must be terminated before he or she can make a claim which triggers § 5.2.that o
Third, Plaintiffs were not terminated prior to submitting their March or April 2010
claims.

First, the Court considers the Committee's determination that the 2008
version of the National City Plan was the version in effect in 2010.  Article 15 of
the 2005 National City Plan states the Plan can be amended from time to time or
discontinued if such a change is deemed necessary or desirable but the Plan
shall not "be amended, modified or discontinued after the Effective Date until the
later of the end of the Protection Period or such time as all claims payable
hereunder have been fully discharged."  2005 National City Plan, ECF No. 51-2.
Section 2.1 (u) defines Protection Period as "the period of time commencing on

Denial of Martin's Appeal, Mot. Convert Ex. L PAGEID # 2931–42, ECF No. 51-17;
Denial of Poling's Appeal, Mot. Convert Ex. M PAGEID # 2947–57, ECF No. 51-17,
Denial of Russi's Appeal, Mot. Convert Ex. N PAGEID # 2959–69, ECF No. 51-17;
Denial of Ziegler's Appeal, Mot. Convert Ex. O PAGEID # 2971–82, ECF No. 51-17.
Accordingly, the Court will use citations to Jones' letter as representative of the
Committee's decision as to all Plaintiffs.

the Effective Date and continuing through the fifteenth month anniversary of the

Implementation Date." *Id.* Section 2.1(i) states:

> "Effective Date". In the event a Change in Control ultimately results from discussions or negotiations involving the Corporation or any of its officers or directors, the "Effective Date" of such Change in Control shall be the date uninterrupted discussions or negotiations commenced.

*Id.*

The Committee determined the phrase "uninterrupted discussions or

negotiations" in the definition of "Effective Date" means discussions or

communications between the buyer and the seller and, therefore, the Effective

Date was, at the earliest, October 3, 2008. The Committee based the October 3,

2008 date on an email from Brian Ferguson, a PNC employee, which stated "[w]e

were first notified that another process was going to take place regarding NCC

on October 3, 2008 and we signed a confidentially agreement on October 5,

2008 to enter the process." Mot. Convert Ex. 36 PAGEID # 1877, ECF No. 51-

10. In addition, in a transcript of a teleconference with analysts following PNC's

announcement of its merger with National City, John Rohr, PNC Chairman and

Chief Executive Officer, stated PNC had "on and off" discussions with National

City for months prior to the announcement and Rick Johnson, PNC Chief

Financial Officer, stated that the current round of discussions had begun October

5. October 24, 2008 Transcript, Mot. Convert Ex. 18 PAGEID # 1569, ECF No.

51-6 (filed as Attachment F to Plaintiff Russi's April 16, 2010 Official Claim

Form).

Plaintiffs contend the Committee's interpretation of the term Effective Date was arbitrary and capricious because it added a requirement that the negotiations be between the seller and ultimate buyer. Plaintiffs argue the Effective Date was September 29, 2008—the date Goldman, Sachs & Co. made a presentation to National City about "Potential Strategic Partners," including PNC, and the day before National City purported to amend and restate the National City Plan.

The Court finds the Committee's determination that the Effective Date was after September 30, 2008 was not arbitrary and capricious. Although the definition of "Effective Date" in the National City Plan is open to different interpretations of who must be included in the uninterrupted discussions and negotiations, that such discussions must include the seller and buyer is not an unreasonable interpretation. The existence of other reasonable interpretations does not mean the Committee's interpretation of that section was arbitrary and capricious. *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

Plaintiffs cite *Jones v. Metropolitan Life Ins. Col.*, 385 F.3d 654, 661 (6th Cir. 2004), in which the Sixth Circuit held an administrator cannot add eligibility requirements to a plan. But here the Committee did not add an eligibility requirement; rather it interpreted an ambiguous term of the Effective Date provision. The Committee has "great leeway" in interpreting an ambiguous term. *Adams*, 2013 WL 123084, at *3.

In addition, the evidence in the administrative record supports the finding
that either October 3 or October 5 was the start of the last round of uninterrupted
negotiations between PNC and National City. Accordingly, the Court finds that
the Committee's determination that the Protection Period began after September
30, 2008 and, therefore, that the 2008 amendments were valid, was not arbitrary
and capricious.

Next, the Court considers whether the Committee was arbitrary and
capricious in its determination that a participant cannot make a claim under the
National City Plan prior to the termination of their employment with Red Capital.
The Committee stated that it was under no obligation to treat Plaintiffs' March or
April 2010 submissions as claims because when they made those submissions,
their employment had not been terminated. Based on §§ 3.1, 3.2 and 5.1 of the
National City Plan, the Committee determined that a claim for benefits may be
submitted only after a failure to timely pay severance benefits in accordance with
the terms of the National City Plan, and that the terms of the National City Plan
do not require such payment until the participant has experienced a termination
of employment. Plaintiffs argue this determination was arbitrary and capricious
because Defendants continually insisted Plaintiffs use the claims process to
determine their rights to benefits under the National City Plan.

Sections 3.1 and 3.2 define the ways in which termination can trigger
eligibility for benefits under the National City Plan. Section 3.1 of the National
City Plan states "[i]n the event the Surviving Entity terminates the Participant's

employment during the Protection Period, the Participant will be entitled to the severance compensation provided by Article 4 . . ." 2008 National City Plan, Mot. Convert Ex. 2, ECF No. 51-3. Section 3.2 states "[t]he Participant may terminate employment with the Surviving Entity during the Protection Period with the right to severance benefits as provided in Article 4 upon the occurrence of one or more of the following events . . ." *Id.* Whereas the 2005 version listed many triggering circumstances, under the 2008 version, a participant may invoke § 3.2 only when the Surviving Entity requires a participant to move his or her principal location of work more than fifty miles. *Id.*

Section 5.1 states

> If after a Change in Control, the Surviving Entity fails to pay any of the severance compensation identified in Article 4 of this Plan, a Participant may make a claim for severance benefits under this Plan by submitting a written request to the Committee on the form supplied for this purpose.

*Id.*

The Court finds the Committee's determination that a participant cannot make a claim prior to termination is not arbitrary and capricious. The combined effect of §§ 3.1, 3.2, 4.1 and 5.1 is to make severance compensation due after termination and a claim possible after the surviving entity fails to pay severance compensation. Although § 5.2 does not explicitly state a claim can only be filed after the surviving entity fails to pay severance compensation, the Committee's decision to construe § 5.1 in this way is not arbitrary and capricious.

Plaintiffs' argument that the Committee was arbitrary and capricious to determine the submissions were not claims after insisting Plaintiffs use the claims process is nothing but an undeveloped attempt to argue estoppel. As the Magistrate Judge noted, Plaintiffs have not satisfied the elements of estoppel. Report and Recommendation 22, ECF No. 84. Most importantly, there is no indication Plaintiffs relied on Defendants' instructions to their detriment when they filed their submissions in March and April 2010.

Finally, there is no evidence PNC terminated Plaintiffs or that Plaintiffs self-terminated pursuant to § 3.2 of the 2008 version of the National City Plan prior to their March or April 2010 submissions. Plaintiffs were not terminated by PNC until April 30, 2010. Although the last of the Plaintiffs submitted his claim form on that day, he had not yet been denied benefits since it was submitted the same day as his termination. In addition, Plaintiffs' conditional resignations at the end of March 2010 invoked provisions in the 2005 version of the National City Plan that were not included in the 2008 version and therefore would be terminations under the 2008 version of the plan. Accordingly, the Committee's determination that Plaintiffs' March and April 2010 submissions were not claims requiring a response within 120 days under § 5.2 was a reasoned determination and the Court will not disturb it. Plaintiffs' motion for judgment on Count VII is denied.[6]

---

[6] Based on the reasoning above, the Court finds Plaintiffs' motion to amend Count VII, ECF No. 92, futile and denies that motion.

## B. Count XI

In Count XI, Plaintiffs seek recovery for a denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(b). Plaintiffs allege § 5.2 of the Red Capital Plan contains the same "deemed approved" language as the National City Plan. Plaintiffs aver Jones and Russi submitted claims under the Red Capital Plan in June 2010; they did not receive denials until December 17, 2010; therefore, Jones and Russi's claims were deemed approved and yet, Defendants denied Plaintiffs' benefits.

### 1. Standard of Review

Section 5.2 of the Red Capital Plan contains the same grant of discretion in Article 14 as the National City Plan except it grants the Plan administrator, not the Committee, the authority to determine claims and construe the terms of the plan. Red Capital Plan § 5.2, Mot. Convert Ex. 3, ECF No. 51-4.

Plaintiffs attempt to impose two limitations on this discretion. First, as with the National City Plan, Plaintiffs argue § 5.2 limits the Plan Administrator's discretion to 120 days after a claim is filed. However, as with the National City Plan, the Court finds that any act of discretion regarding whether § 5.2 applied to Jones and Russi's June 2010 claims was separate and distinct from the Committee's decision on the substantive merits of Jones and Russi's claims and, therefore, the Plan Administrator had discretion to make a determination on Plaintiffs' § 5.2 arguments.

Second, Plaintiffs argue if the Red Capital Plan was terminated, the Plan Administrator lost discretion to construe the terms of the plan. Again, the Court

declines to decide whether an ERISA administrator's discretion outlasts the plan itself. Rather, the Court undertakes a *de novo* review of the threshold question of whether the Red Capital Plan was terminated.[7]

## 2. Purported Termination of Red Capital Plan

On April 16, 2010, PNC issued a notice titled "Red Capital Group Management Severance Plan (Effective July 1, 2008), Plan Discontinuance and Termination." Mot. Convert Ex. 37, ECF No. 51-10. Plaintiffs argue that termination was improper because it occurred during the Protection Period which culminated in PNC's sale of Red Capital to ORIX on May 8, 2010. Defendants respond that PNC only sold some of Red Capitals assets, that the sale of Red Capital assets did not constitute a Change of Control which would trigger the Protection Period, and, therefore, the termination of the Red Capital Plan on April 16, 2010 was valid.

Similar to the National City Plan, the Red Capital Plan cannot be terminated during the Protection Period, and the Protection Period commences on the Effective Date and continues for fifteen months. Red Capital Plan Article 15, Section 2.1(s), ECF No. 51-4. Section 2.1(i) of the Red Capital Plan defines "Effective Date" as follows:

---

[7] Neither side notes that the Red Capital Plan vests discretion in the Plan Administrator but the denial of Plaintiffs' claims are phrased as decisions by the Committee. *See* Red Capital Plan art. 14, ECF No. 51-4; Denial of Jones' Claims, Mot. Convert Ex. 43, ECF No. 51-10. The denials are signed by Allen, the Plan Administrator. Because the Court applies *de novo* review to the threshold question and does not continue in its analysis of the Committee's decision, the Court declines to consider what deference a decision by the Committee instead of the Plan Administrator should receive.

> In the event a Change in Control ultimately results from discussions
> or negotiations involving RED, the "Effective Date" of such Change
> in Control shall be the date uninterrupted discussion or negotiations
> commenced.

*Id.* at PAGEID # 1420.  Section 2.1(d) of the Red Capital Plan defines "Change in

Control" as "the sale of all or a substantial amount of the assets and liabilities of

RED by Corporation to a non-affiliate.  For purposes of this Plan substantial

amount shall mean a least 90% of RED's assets and liabilities." *Id.*

Defendants argue the sale of assets to ORIX was not a change in control

because it did not involve 90% of Red Capital's assets and therefore there was

no Effective Date and no Protection Period.  To support the fact that the sale to

ORIX did not constitute a sale of 90% of the assets, Defendants rely on an email

from David Williams to one of the Committee members which states "the 90%

test was not met in any case in the sale to ORIX (majority owner) on May 7th,

2010."  Email from David Williams PAGEID # 1875, ECF No. 51-10.

Plaintiffs argue the sale to ORIX was a Change in Control.  Plaintiffs rely

on Plaintiff Russi's affidavit which states that he reviewed portions of proposed

transaction documents regarding the possible sale of Red Capital to a buyer

group led by ORIX and that the documents he reviewed indicated that the

transaction would be structured as the sale of the ownership interest in Red

Capital rather than a sale of Red Capital's assets.  Reply Mot. Part. Summ. J. Ex.

2, ECF No. 66-2.  Plaintiffs also complain of a lack of access to documents which

might refute Defendants' position.

The Court does not have enough information to determine whether PNC properly terminated the Red Capital Plan on April 16, 2010. The Court does not know who David Williams is in relation to the ORIX transaction or what information he had when he made the assertion that the ORIX transaction did not meet the 90% test. In addition, Russi's affidavit states that at least earlier drafts of the sale included a sale of ownership, not just of some assets. This is not, however, enough for the Court to determine there was a Change in Control triggered by the sale to ORIX.

Accordingly, the Court denies Plaintiffs' motion for judgment on Count XI. The Court declines to remand to the Committee until after the motion for discovery and motions for judgment on the administrative record have been considered.

## VI. CONCLUSION

As the Court **SUSTAINS** Defendants' objections and employs different reasoning for denying Plaintiffs' motion than that recommended by the Magistrate Judge, Plaintiffs objections are, in the context of this Order, **MOOT**. In addition, the Court **DENIES** Plaintiffs' motion to amend the complaint, ECF No. 92.

As stated in footnote one, the Court **GRANTS** the Red Capital Defendants' request to join the other Defendants' objections, ECF No. 94, the other Defendants' response to Plaintiffs' objections, ECF No. 103, and the other Defendants' response to Plaintiffs' motion to amend, ECF No. 105.

The Court **ADOPTS** the ultimate recommendation of the Magistrate Judge,

although it does so for the alternative reasoning discussed above.  The Court

**DENIES** Plaintiffs' motion for partial summary judgment, ECF No. 53.

 **IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**