```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Craig S. Jones, et al.,      :

     Plaintiffs,             :

v.                           :      Case No. 2:11-cv-380

Kerry A. Allen, Plan         :      JUDGE MICHAEL H. WATSON
Administrator, et al.,              Magistrate Judge Kemp
                             :
     Defendants.
```

REPORT AND RECOMMENDATION

Plaintiffs bring this ERISA action against their former employers as well as the plans and certain related individuals and companies. Before the Court is Defendants' motion for judgment on the pleadings as to Count II of the Complaint (Doc. #86). This motion addresses only Plaintiffs' claim for retaliation in violation of ERISA, 29 U.S.C. §1140. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Judgment on the Pleadings as to Count II of the Complaint (Docket No. #86) be denied.

## I. Facts

Because this case is before the Court by way of a motion for judgment on the pleadings, the only facts which the Court may consider are those well-pleaded facts which appear on the face of the complaint. The relevant allegations from Plaintiffs' complaint follow.

Plaintiffs in this action are five individuals previously employed by Red Mortgage Capital, Inc., Red Capital Markets, Inc., Red Capital Advisors, LLC, or Red Capital Community Development Company, LLC, (collectively "Red Capital"). Plaintiffs filed this action against Red Capital, certain severance plans, a plan administrator, and a company that acquired Red Capital, alleging that those Defendants wrongly

denied them benefits and otherwise infringed on their rights under ERISA, infringed on their contractual rights, and also retaliated against them for exercising ERISA-related rights.  At issue here is Plaintiffs' claim that Red Capital retaliated against them for exercising their rights under an employee benefit plan and ERISA in violation of 29 U.S.C. §1140.

Red Capital engages in mortgage and investment banking activities.  Between 1992 and 2003, Red Capital hired each of the Plaintiffs.  In 2004, National City Corporation ("National City") acquired Red Capital.  On December 31, 2008, Defendant the PNC Financial Services Group, Inc. ("PNC") acquired National City, and assumed responsibility for the administration of certain benefit plans.

Plaintiffs have asserted claims pursuant to various severance plans.  One such plan is the National City Corporation Amended and Restated Management Severance Plan ("National City Plan").  (Doc. #2, Exhs. 1 & 2.)  This plan covers certain executives of National City and its subsidiaries, including Red Capital, and it provides for the award of severance benefits in certain circumstances if National City incurs a "Change in Control."  (Doc. #51, Exhs. 1 & 2 at §§ 1.2 & 2.1(d)).  Severance compensation may be awarded if the "Surviving Entity terminates the Participant's employment during the Protection Period . . . or if the Participant terminates his employment pursuant to Section 3.2 . . . ."  (Doc. #51, Exhs. 1 & 2 at §§ 4.1).  The Protection Period begins on the "Effective Date," which is defined as follows: "In the event a Change in Control ultimately results from discussions or negotiations involving the Corporation or any of its officers or directors, the 'Effective Date' of such Change in Control shall be the date uninterrupted discussions or negotiations commenced."  (Id. at §2.1(i) & (u).)  The Protection Period continues "through to the fifteenth month

2

anniversary of the Implementation Date." (Id. at §2.1(m) & (u).) One version of the National City Plan was effective January 1, 2005 and amended the prior version. National City Corporation subsequently signed an amended version of the National City Plan that purported to be effective September 30, 2008.

Plaintiffs have also asserted claims pursuant to an unwritten severance agreement that they refer to as the 2006 Severance Guaranty.

Plaintiffs have also asserted claims in this litigation pursuant to the Red Capital Group Management Severance Plan ("Red Capital Plan"), although Defendants argue that Plaintiffs have not alleged that their retaliation claim is based on the Red Capital Plan.

By early 2010, PNC was in active discussions about selling Red Capital.

On March 16, 2010, Plaintiffs and a few other individuals "notified PNC and Red Capital that they intended to assert their right to claim benefits under the 2005 National City Plan and/or the 2006 Severance Guaranty (as defined below) as a result of the PNC-National City Transaction." (Doc. #2 at ¶32). On March 17, 2010, Defendants extended "offers of continuing employment" to Red Capital's employees, but excluded Plaintiffs and other individuals who had notified Defendants of their intention to claim severance benefits.

Defendants initially extended offers of continuing employment to two individuals who had sent similar notices asserting their rights under the Plans, but their notices were not received until after March 17, 2010. Once Defendants received their notice of intention to claim benefits, those individuals were no longer considered for continued employment.

The individuals who were not initially offered continued employment were later informed that they would be retained if

they would sign full releases of all claims under the PNC and Red Capital severance plans.

A March 18, 2010 email from a representative of the ORIX investor group informed one of the Plaintiffs that the ORIX group considered the March 16, 2010 letters to be "precursors to litigation."

On March 30 and 31 of 2010, Plaintiffs notified Defendants of their conditional resignations.[1]

On April 27, 2010, PNC notified Plaintiffs that their last regularly-scheduled work day would be April 30, 2010. Plaintiffs received their salaries through June 26, 2010. One of the Plaintiffs, Plaintiff Poling, was informed that he was being terminated as a consequence of his pursuit of his severance claims and related refusal to execute a release of claims in favor of Defendants.

## II. Procedural History

On February 10, 2012, one of the Plaintiffs, Steven R. Russi, filed a Motion for Summary Judgment on the Retaliation Claim. (Doc. #32). On March 19, 2012, Defendants responded and filed a cross motion for summary judgment on the same claim. (Doc. ##37 & 38). On September 26, 2012, after the motions were fully briefed, the Court issued an Opinion and Order denying both motions, holding that there were disputed issues of fact as to Defendants defense to Mr. Russi's retaliation claim. (Doc. #57). Defendants' affirmative defenses are not at issue in the motion before the Court here; however, several of the Court's legal conclusions regarding the retaliation claim are relevant here. Those portions of the Opinion and Order are referred to in the

---

[1] Plaintiffs continued to come to work after the "conditional" resignations, and Defendants informed Plaintiff Russi that PNC believed those "conditional" resignations to be ineffective.

4

discussion that follows.

On August 16, 2013, the Court ruled on several motions including Plaintiffs' Motion for Partial Summary Judgment, which the Court construed as a motion for judgment on the administrative record.  (Doc. #125 at 9).  While that Opinion and Order decided some of the factual disputes that Defendants refer to in the motion currently before the Court, that Opinion and Order did so using a standard of review appropriate to a motion for judgment on the administrative record – it reviewed the Committee's determination for arbitrary and capricious error.  (Doc. #125 at 18).  Here the Court is not reviewing the Committee's determination.  Rather, the Court is deciding a motion for judgment on the pleadings.  Consequently, it may not resolve or even consider disputes of fact but, as discussed in the section that follows, must accept as true all well-pleaded allegations of Plaintiffs' pleadings.  Accordingly, that Opinion and Order is not relevant to the discussion that follows.

### III. Standard for Judgment on the Pleadings

A motion for judgment on the pleadings filed under Fed. R. Civ. P. 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979).  In ruling upon such motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973).  The same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6); that is, the Court must separate factual allegations from legal conclusions, and may consider as true only those factual allegations which

5

meet a threshold test for plausibility.  See, e.g., Tucker v. Middleburg-Legacy Place, 539 F.3d 545 (6th Cir. 2008), citing, inter alia, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  It is with these standards in mind that the motion for judgment on the pleadings must be decided.

## IV.  Analysis

Plaintiffs have brought a retaliation claim pursuant to ERISA, which provides in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.] . . . .

29 U.S.C.A. § 1140.

### A.  Article III Standing

Defendants first argue that Plaintiffs lack Article III standing to bring a retaliation claim.  (Docket #86 at 10-13). It is true that plaintiffs "must possess both constitutional and statutory standing in order for a federal court to have jurisdiction."  Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606 (6th Cir. 2007) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).  "As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing."  Loren, 505 F.3d at 607 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).  In order to establish Article III standing, a plaintiff "must allege: (1) 'injury in fact,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) redressability."  Taylor v. KeyCorp, 680 F.3d 609, 612 (6th Cir. 2012) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal

6

quotation marks and citations omitted)).

Defendants argue that Plaintiffs lack standing because "the condition precedent for becoming eligible to receive change of control severance pay was never fulfilled." (Doc. #86 at 10). That statement and much of the argument that follows are premised on the assertion that Plaintiffs lack standing because they will not be able to recover benefits under the plans. To that extent, the argument glosses over the fact that the deprivation of plan benefits is not the only injury in fact which Plaintiffs allege. However, at the very end of their argument, Defendants discuss more generally the requirements of Article III standing and suggest that Plaintiffs cannot show a concrete and particularized injury because Plaintiffs have not properly alleged that their employment was terminated as a result of their attempt to assert rights under ERISA. (Doc. #86 at 12).

In order to establish an "injury in fact," a plaintiff "must have a 'personal stake' in the dispute, alleging an injury 'particularized as to him.'" Taylor v. KeyCorp, 680 F.3d 609, 612 (6th Cir. 2012) (citing Raines v. Byrd, 521 U.S. 811, 819 (1997)). Here, Plaintiffs have alleged that upon notifying Defendants of their intention to claim benefits, Defendants made offers of continuing employment to all Red Capital employees except those who had expressed an intention to claim benefits, and that Plaintiffs ultimately lost their employment. (Doc. #2 at ¶¶ 243-44, 248). Such allegations of lost employment are sufficient to satisfy the "injury in fact" requirement for Article III standing.

Nothing in Defendants' reply brief changes this conclusion. There, Defendants continue to argue that Plaintiffs cannot show injury in fact because they were not plan participants, and because the 2005 National City Plan and the 2006 Severance Guaranty were extinguished by the 2008 version of the National

7

City Plan.  Again, this argument fails to take into account that one type of injury in fact which can support a retaliation claim is an adverse employment action, as opposed simply to a loss of benefits.  In its September 26, 2012 Opinion and Order deciding the cross-motions for summary judgment as to the retaliation claim, the Court determined that Plaintiff Russi successfully established that he was injured by an adverse employment action including being excluded from the offer of continued employment, and ultimately being terminated.  (Doc. #57 at 17).  The Complaint makes the same allegations as to all Plaintiffs.  (Doc. #2 at ¶¶243-248).  Accordingly, all Plaintiffs have alleged an injury in fact for purposes of Article III standing.

As to Defendants' argument that because certain plans were extinguished, Plaintiffs have no standing to assert a retaliation claim, the same Opinion and Order held as follows:

> Defendants also argue Mr. Russi has only set forth a retaliation claim pursuant to the 2005 version of the National City Plan, which Defendants claim, was amended in 2008.  However, whether or not Mr. Russi was entitled to benefits under the particular version of the plan in effect, it remains true that Mr. Russi's letter was an effort to seek benefits pursuant to a plan of which he was a participant.  Accordingly, Mr. Russi's action in writing the March 16, 2010 letter was protected by ERISA.

(Doc. #57 at 16).  The Complaint alleges that Plaintiffs were participants of the National City Plan.  Whether or not the 2008 amendment to the National City Plan was valid is a question of fact not appropriately resolved at this stage.  As a result, there is no need to consider Defendants' argument regarding the existence of the 2006 Severance Plan at this time.

Defendants do not argue that Plaintiffs have failed to satisfy the second or third requirements for Article III standing, but focus their arguments solely on the issue of

whether an adequate injury in fact has been alleged.  The Court is satisfied that the allegations of the complaint are sufficient to plead, plausibly, both causation and redressability.  Therefore, the complaint adequately alleges that Plaintiffs have standing under Article III to pursue their retaliation claim.

    **B.    ERISA Standing**

In addition to Article III standing, Plaintiffs must also have statutory standing pursuant to ERISA.  <u>Loren v. Blue Cross & Blue Shield of Mich.</u>, 505 F.3d 598, 606 (6th Cir. 2007).  ERISA provides that only "participants," "beneficiaries," "fiduciaries," and the Secretary of Labor may bring an action to enforce its provisions. 29 U.S.C. § 1132.  ERISA defines "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7); <u>see also Swinney v. Gen. Motors Corp.</u>, 46 F.3d 512, 518 (6th Cir. 1995).

Defendants argue that "[t]he crucial date for determining 'participant' status is May 3, 2011, when Plaintiffs filed their Complaint."  (Doc. #86 at 13).  In support of this argument, Defendants cite to <u>Morrison v. Marsh & McLennan Companies, Inc.</u>, 439 F.3d 295, 304 (6th Cir. 2006), which considered a claim relating to an administrator's refusal to supply requested information and which considered whether the plaintiff was a "participant" at the time of the filing of the complaint.  There, the court had already determined that the plaintiff was not a beneficiary of the plan in question after 1999, and that she had no statutory standing to bring a claim for refusal to provide her with plan documents based on a request she made in 2002.  The court did, in passing, suggest that standing was determined as of the time the plaintiff filed suit, but that clearly was not a necessary determination based on the facts of that case.

Apart from <u>Morrison</u>, there are cases where the Court of

9

Appeals has determined "participant" status as of the time the plaintiff seeks to assert his or her rights pursuant to the plan or ERISA rather than the time suit is filed. See, e.g., Jordan v. Tyson Foods, Inc., 312 F. App'x 726, 733 (6th Cir. 2008) (concluding that the plaintiff had statutory standing because "at the time that he requested the relevant documents, Jordan had a colorable claim to vested benefits under the Tyson Plan") (citations omitted); Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 445 (6th Cir. 2006) (concluding that plaintiff had statutory standing because the plaintiff had made "at least a colorable claim that he was an 'employee,' and therefore an ERISA 'participant,' at the time of his disability." (emphasis added)).

The Court of Appeals for the Ninth Circuit has concluded that for retaliation claims in particular, it may be unwise to determine standing at the time the lawsuit is filed. McBride v. PLM Int'l, Inc., 179 F.3d 737, 743-44 (9th Cir. 1999).[2] This

---

[2] The Ninth Circuit concluded that for retaliation claims, "participant" status should be determined as of the date of the alleged ERISA violation:
> The concept of measuring ERISA standing at the time an action is filed is a judicially created requirement which is appropriate for most circumstances, but not for the situation we face in this case. Section 1140 forbids employers and other ERISA entities from interfering with certain protected rights and is enforceable through ERISA's civil enforcement mechanism in section 1132. Depriving a plaintiff of standing to sue under ERISA for his employer's clear violation of section 1140 would, in effect, make standing contingent upon the occurrence of subsequent events entirely within the control of the employer. "[I]t would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing." Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1221 (5th Cir. 1992) (citing Amalgamated Clothing

Court agrees with that analysis, and finds nothing in the decisions within this Circuit to the contrary.  Accordingly, the appropriate date for determining Plaintiffs' status as "participants" for purposes of this retaliation claim is the date upon which Plaintiffs exercised their ERISA rights.  Plaintiffs have alleged that they were current employees and participants of the National City Plan at that point.  Accordingly, Plaintiffs have properly alleged statutory standing.

  The Court notes that it is likely that even if Plaintiffs' status as "participants" were determined as of the date of filing the complaint, Plaintiffs would still qualify as "participants" for purposes of ERISA standing.  "[A] former employee has standing as a 'participant' where, but for the alleged misrepresentations or breaches of duty by fiduciaries, the employee 'would have been in a class eligible to become a member of the plan.'"  Shahid v. Ford Motor Co., 76 F.3d 1404, 1410-11 (6th Cir. 1996) (quoting Swinney v. Gen. Motors Corp., 46 F.3d 512, 519 (6th Cir. 1995) (additional citations omitted)).  In Shahid the Court of Appeals held that the plaintiff had standing as a "participant" because if the defendant had not improperly terminated her or induced her to delay her acceptance of the plan at issue, she may have become eligible to participate in the plan.  Id. at 1411.  It would undermine ERISA's intent to deny standing to former employees who became former employees as a

---

  & Textile Workers v. Murdock, 861 F.2d 1406, 1418 (9th Cir. 1988)). . . .  We hold that under section 1140, participant status must be adjudged at the time of the alleged ERISA violation.  Standing under section 1140 does not depend upon whether the former employee seeks to or could obtain reinstatement to covered employment.  The continued existence of a plan is not essential to the enforcement of the goals section 1140 was designed to address.  See Christopher, 950 F.2d at 1221.

11

result of the employer's retaliation.

Here, Plaintiffs have alleged that they were employees covered by the National City Plan at the time of their March 16, 2010 letters expressing their intent to claim benefits and that their employment did not end until April or May of 2010. Defendants argue that Plaintiffs were not "participants" at the time they filed the present lawsuit because they were former employees and because the Protection Period under the National City Plan had ended and, accordingly, "no Plaintiff can now ever become eligible for severance benefits from either Plan." (Doc. #86 at 15). According to Defendants, after the Protection Period expired on March 31, 2010, "Plaintiffs lost their potential status as Plan 'participants.'" (Doc. #86 at 15). Based on this reasoning, as of April 1, 2010 (the day after the Protection Period expired), Plaintiffs were still employees, but were employees who, according to Defendants, could no longer seek benefits for the Change in Control that occurred when PNC acquired National City on December 31, 2008.

This argument is not persuasive. Regardless of whether Plaintiffs could seek benefits for that particular Change in Control, Plaintiffs were employees covered by the National City Plan at that point such that, if there were another Change in Control, Plaintiffs could have potentially been eligible for benefits. Accordingly, as of April 1, 2010, Plaintiffs would have been "participants" for standing purposes. See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1981) (stating that an employee currently in covered employment fits within the definition of a "participant"). The only thing that changed between April 1, 2010 and May 3, 2011 was the allegedly retaliatory termination of Plaintiffs' employment.

Defendants urge the Court to find that even if Defendants' action in terminating Plaintiffs was in retaliation for

12

Plaintiffs' having exercised their rights pursuant to ERISA and the plans, the termination should deprive Plaintiffs of standing to sue for the retaliation. The Court of Appeals' reasoning in Swinney, 46 F.3d at 518-19, and Shahid, 76 F.3d at 1410-11 preclude that conclusion. While it is true that under the terms of the National City Plan, participants could not be awarded plan benefits based on terminations that occurred outside the Protection Period, the question here is a different one - namely, whether Plaintiffs may obtain relief if Defendants retaliated against them for asserting their rights under the plans or ERISA. Nothing in ERISA's retaliation provision requires an adverse employment action to occur within the time frames set forth in the plan in order to be actionable. An action for retaliation is not a claim for benefits made to the plan administrator, but a distinct cause of action. It would largely defeat the purpose of the statute to allow a defendant to deprive a plaintiff of standing and, as a result, defeat a retaliation claim simply by engaging in retaliatory behavior.

Defendants also argue that both the 2005 National City Plan and the 2006 Severance Guaranty "ended" on September 30, 2008 when the National City Plan was amended. (Doc. #86 at 13). As discussed above, whether or not the 2008 amendments to the National City Plan were valid, the National City Plan continued to exist, and accordingly, Plaintiffs were, at the very least, participants in the National City Plan at the time of the adverse employment action.

### C. Elements of Retaliation Claim

Next, Defendants reassert the argument (which they also made in their cross motion for summary judgment) that Plaintiffs have not adequately alleged the elements of a retaliation claim. Those arguments are no more persuasive in this context.

First, Defendants argue that Plaintiffs were not exercising

rights to which they were entitled under the provisions of a plan.  In support of this argument, Defendants point to a Southern District of California case involving former employees of Defendants who brought ERISA suits under the same plans.  In that case, Bluhm v. PNC Financial Services Group, Inc., USDC, S.D. Cal. Case No. 11-cv-313-GPC, the court determined for purposes of the pending motion for summary judgment that the "Committee members reasonably determined that the 2005 Plan and the alleged Interim Agreement were properly amended under Section 2.1(i) of the 2005 Plan." (Doc. #86-1 at 17).  Relying on Bluhm, Defendants argue that Plaintiffs had no rights under the 2005 version of the National City Plan because it was properly amended in 2008.

For purposes of the motion for judgment on the pleadings before the Court here, however, the Court is guided by the allegations in the complaint.  Viewing Defendants' argument in that context, it has not yet been determined for purposes of these Plaintiffs' retaliation claim whether the 2008 amendment to the National City Plan was proper.  Further, even if it was, Plaintiffs had rights under whichever version of the National City Plan was in effect.  This Court has already determined that Plaintiff Russi's March 16, 2010 letter was an "effort to seek benefits pursuant to a plan of which he was a participant." (Doc. #57 at 16).  The same reasoning applies to the other Plaintiffs as well.

Defendants also argue that there was no adverse employment action because Defendants offered to keep Plaintiffs if they would sign a release of all employment-related claims, including any claims to severance benefits.  They contend what really happened was that they failed to hire the Plaintiffs, not that they terminated Plaintiffs' employment.  Both of these arguments were also addressed and decided by the Court in its September 26,

14

2012 decision.  As to the failure-to-hire argument, the Court held that Defendants terminated Plaintiffs, that the termination was made before the Purchaser purchased portions of Red Capital, and for that reason it "was more like a termination or discontinuation of employment rather than a failure to hire." (Doc. #57 at 17).  As to the release-of-employment-related-claims argument, the Court held that "it would run afoul of the intent of §510 to immunize adverse employment actions which were conditioned on ceasing the ERISA-protected conduct that prompted the adverse employment action in the first place."  (Doc. #57 at 18).  For all of these reasons, the Court concludes that Plaintiffs' allegations are sufficient to state a claim for retaliation under ERISA.

### D. Remedy

Lastly, Defendants argue that Plaintiffs cannot seek money damages as relief for their retaliation claim.  Plaintiffs respond that they are not seeking severance benefits as a part of their retaliation claim but rather equitable relief including reinstatement.  (Doc. #102 at 21).  It appears that the parties are in agreement that Plaintiffs may only seek equitable relief on their retaliation claim, and there is no need to discuss the issue of remedy further.

### V. Conclusion

For all the foregoing reasons, the Magistrate Judge concludes that none of Defendants' arguments about Article III standing, ERISA standing, or the adequacy of the complaint to state a retaliation claim under §1140 have merit.  Therefore, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Judgment on the Pleadings as to Count II of the Complaint (Doc. #86) be **DENIED**.

### VI.

If any party objects to this Report and Recommendation, that

party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal,  the decision of the District Court adopting the Report and Recommendation. See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

                                         /s/ Terence P. Kemp
                                         United States Magistrate Judge